JAMES McQUIGGAN *v.* JOHN LADD, ET AL.

January Term, 1906.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, and MILES, JJ.

Opinion filed July 11, 1906.

*Assault and Battery—Self-defence—Degree of Force Justi-*
*fiable—Evidence—Specific Instances—Real Character and*
*Reputed Character—Plaintiff's Financial Condition—Mo-*
*tion for Verdict—Defective Exceptions.*

Where in an action for assault and battery, defendant justifies on the
ground of self-defence, he assumes the burden of making it affirm-
atively appear that he used no more force in his defence than
reasonably appeared to him in the circumstances, to be necessary
for his protection.

The word "character" as applied to a man, has two distinct meanings.
It may denote either real character or reputed character.

In the impeaching of a witness by showing his general reputation for
veracity, only reputed character is involved, and, hence, only gen-
eral reputation is admissible to establish it.

But in an action for assault and battery wherein defendant justifies
on the ground of self-defence, and claims that his conduct was
affected by his knowledge that plaintiff was a quarrelsome and
dangerous man, both plaintiff's real character and his reputed
character may be involved; and defendant may prove plaintiff's
real character in that respect by specific instances of its exhibition,
and his like reputed character by general reputation; for defend-
ant's conduct would be as greatly affected by his knowledge of
plaintiff's real character, as by his belief in the truth of that gen-
eral reputation which constituted plaintiff's reputed character.

Nor in such case is it necessary that defendant should have knowledge
of each specific instance adduced in evidence of the claimed exhi-
bition of plaintiff's quarrelsome character; it is only necessary
that the jury should find that such was in fact plaintiff's real
character, and that defendant knew it.

In an action for assault and battery wherein defendant justified on the
ground of self-defence and claimed that his conduct was affected

by his knowledge that plaintiff was in the habit of using intoxicat-
ing liquors, that when he was intoxicated he was quarrelsome and
dangerous, and that at the time of the affray in question he was
intoxicated, and plaintiff's evidence tended to show that he never
used intoxicating liquors, it was proper to allow defendant to show
that on a certain occasion, six years before the affray in question,
plaintiff was intoxicated and "appeared wild and cursing and ugly."

In an action for assault and battery it was error to allow defendant's
witness to testify that a certain witness produced by plaintiff had
stated that he would do everything in his power to ruin defend-
ant's father.

In an action for assault and battery, defendant's witness was allowed
to testify that a certain witness produced by the plaintiff and who
in cross-examination denied that he said so, told him that a cer-
tain other witness produced by the plaintiff, and who had testified
that she saw the affray in question, did not in fact see it. *Held*
in the circumstances, no error.

Defendants' testimony to the effect merely that they had been cau-
tioned by their parents as to their conduct towards the plaintiff,
could not have harmed the plaintiff.

The ruling of the trial court on the question of remoteness of offered
evidence is not, ordinarily, revisable in the Supreme Court.

In an action for assault and battery, plaintiff's offer to show that one
of defendants threw certain articles out of a sled was properly
excluded.

In an action for assault and battery, plaintiff's offer to show merely
"his pecuniary condition at the time of the assault and after," was
properly excluded.

Where the bill of exceptions states only that "at the end of the defend-
ant's case" plaintiff moved for a verdict against one of the defend-
ants, which motion was denied, subject to plaintiff's exception, but
the evidence is not referred to, the exception is not well taken.

The amount of force which a person is justified in using in self-defence,
is that force which reasonably appears to him, in the circumstances,
to be necessary for his protection; and it is error to instruct the
jury that it is such force as he "honestly believes" in the circum-
stances to be necessary for his protection.

TRESSPASS for assault and battery against John Ladd,
Daniel Ladd, and Eugene Spicer. Daniel Ladd's plea, *son as-*

*sault demesne.* Replication, *de injuria.* Plea of John Ladd and Eugene Spicer, the general issue. Trial by jury at the June Term, 1905, Orange County, *Powers, J.,* presiding. At the close of the plaintiff's evidence the court directed a verdict in favor of Eugene Spicer. Verdict as to the other defendants, not guilty, and judgment thereon. The plaintiff excepted.

Plaintiff's second, third, fifth, seventh, eighth and eleventh exceptions were as follows:

. "2. The testimony of Patrick Brown, which tended to show that on a certain occasion, six or seven years before that time, when the plaintiff was arrested and convicted for breach of the peace, that he was under the influence of intoxicating liquors, and appeared wild and was cursing and ugly, was further objected to on the ground of remoteness, and an exception was allowed. It appeared from the defendant's evidence in connection with this that the plaintiff informed the defendant of the trouble he had at that time and on that occasion, and that the plaintiff informed this defendant that he, meaning the plaintiff, 'cleaned out the whole boarding house.' "

"3. The defendants, under the objection and exception of the plaintiff were permitted to show by Mrs. Walter Ladd, mother of the defendants, John and Daniel Ladd, that on several occasions prior to the trouble she had seen the plaintiff under the influence of intoxicating liquor, for the purpose of impeaching, discrediting and contradicting the plaintiff."

"5. The defendants were allowed to show by witness, Frank Ladd, subject to the plaintiff's objection and exception, that witness, Royal Flanders, a witness of the plaintiff, told him, Frank Ladd, that Mrs. McQuiggan didn't know anything and didn't see the trouble. Witness Royal Flanders, on cross-examination, was asked the question if he didn't tell Frank Ladd, that witness, Mrs. McQuiggan, didn't know anything,

and didn't see the trouble, to which question witness answered 'No.' "

"The evidence of the defendant tended to show that Flanders had been somewhat active in looking up evidence for the plaintiff, and testified, as the evidence of the defendant tended to show, to facts and instances somewhat different than what he told Mr. Frank Ladd a short time before, and the question objected to was about a matter which at the time was the subject of conversation."

"7. The defendant was allowed to introduce testimony, subject to the plaintiff's objection and exception, that Mrs. McQuiggan went down to Archie McCormick's one evening, and that she told Mr. McCormick about the intoxicated condition of Mr. McQuiggan, and further that on that occasion she appeared wild and a little mite scared."

"8. The plaintiff offered in rebuttal the following testimony, which was excluded, and the plaintiff was allowed an exception. That while the mules were being hitched up, that one of the boys, either John or Daniel, threw out of the sled an evener with one whiffletree on it, and also a separate whiffletree.

Court.—Do you claim they were implements of war?

Darling.—Don't know anything about that; we shall claim they had the tools.

The court ruled that this testimony was inadmissible to characterize the assault, or to impeach the statement made by a witness for the defence, that there was nothing in the sled body but some blankets in a box used for carrying their dinner."

"11. The plaintiff offered evidence as to his pecuniary condition at the time of the assault and after, and was allowed an exception to the ruling of the court excluding the same."

*Harvey, Harvey & Harvey* for the plaintiff.

Character cannot be shown by specific instances, and can only be shown by general reputation. *Golden* v. *Lund,* 50 Neb. 867; *Carlton* v. *State,* 43 Neb. 374; *Reg* v. *Rayton,* 10 Cox. C. C. 25; *Pound* v. *State,* 43 Ga. 88; *Nills* v. *Curtis,* 158 Mass. 131; *Comm.* v. *O'Brien,* 119 Mass. 342; *Cornell* v. *State,* 75 S. W. 513; *State* v. *Shudwell,* 22 Mont. 559; *Brownell* v. *People,* 38 Mich. 782; *State* v. *Meins,* 36 Ore. 315; *Jenkins* v. *State,* 80 Md. 72; *People* v. *Druse,* 103 N. Y. 656; *State* v. *Field,* 14 Me. 244; *State* v. *Abarr,* 39 Iowa 189; *Comm.* v. *Hillard,* 2 Gray 294; *Nichols* v. *People,* 23 Hun. 165; *Dupree* v. *State,* 33 Ala. 388; *Eggler* v. *People,* 56 N. Y. 642; *People* v. *Fundel,* 58 Hun. 482; *Thomas* v. *People,* 67 N. Y. 218; *Ross* v. *Lapham,* 14 Mass. 279; *Pratt* v. *State,* 56 Ind. 179; *Morgan* v. *State,* 88 Ala. 223; *Harrison* v. *Harrison,* 43 Vt. 417; *State* v. *Lull,* 48 Vt. 581.

Courts have universally held that in an action where self-defence is pleaded, while proof of plaintiff's character can be shown, knowledge of such facts must be shown to have been possessed by the party pleading the defence, prior to the time he so defended himself. *State* v. *Meader,* 47 Vt. 79; *Galbraith* v. *Flemming,* 60 Mich. 403.

The pecuniary condition of the plaintiff was admissible. *McNemara* v. *King,* 7 Ill. 432; *Sloane* v. *Edwards,* 61 Md. 89; *Garther* v. *Blowers,* 11 Md. 536; *Eltringham* v. *Earhart,* 67 Miss. 488; *Dailey* v. *Houston,* 58 Mo. 361; *Heneky* v. *Smith,* 10 Ore. 335.

The court erred in instructing the jury that the amount of force which defendant should use in defending himself was the amount which he "honestly believed" was necessary

in the circumstances. *Anderson* v. *U. S.*, 170 U. S. 481; *Price* v. *State*, 36 Tex. Cr. App. 404; *Addington* v. *U. S.*, 106 U. S. 185; *Hurd* v. *People*, 25 Mich. 405; *State* v. *Keene*, 50 Mo. 357; Wigmore, Ev. § 63; Hughes Instruction to Juries, § 256; *May* v. *State*, 6 Tex. App. 191; *State* v. *Jackson*, 10 S. E. Rep. 769; *State* v. *Hickam*, 95 Mo. 322; *Davis* v. *State*, 31 Neb. 240; *Jones* v. *Bradwell*, 10 S. W. Rep. 745; *State* v. *Howard*, 143 Kan. 173.

*Richard A. Hoar* for the defendant.

In cases of this sort it is always proper to prove that the plaintiff was reported to be a quarrelsome man, or that he was in fact such, and that this was known to the defendant at the time of the affray. *Powers* v. *Beach*, 26 Vt. 529; *Knight* v. *Smyth*, 57 Vt. 529; *Tenny* v. *Harvey & Smith*, 63 Vt. 520.

MILES, J.   This is an action for an assault and battery, against John Ladd, Daniel Ladd and Eugene Spicer.   John Ladd and Eugene Spicer pleaded the general issue.   Daniel Ladd pleaded the general issue and also *son assault demesne,* to which last plea the plaintiff replied *de injuria.*

The case was tried by jury and comes to this Court on exceptions to the admission of certain evidence, and to the charge of the court upon the matter of self-defence.

It was claimed on the part of the defendants and their evidence tended to show that what was done on the occasion complained of, was done in self-defence, and that no more force was used by Daniel Ladd, the only defendant who used any actual force upon the plaintiff, than he reasonably believed was necessary under all the circumstances.

The defendants further claimed and their evidence tended to prove that the plaintiff was under the influence of intox-

icating liquor at the time of the alleged assault and battery, which Daniel then detected; that Daniel knew at that time, by reputation and observation, that when the plaintiff was under the influence of intoxicating liquor he was a quarrelsome and dangerous man.

The evidence of the plaintiff, by his wife, Mrs. McQuiggan, tended to show that plaintiff was not under the influence of intoxicating liquor at the time of the alleged assault and battery upon him and never used the same, and that she never went to one Archie McCormick's house to have Mr. McCormick come to their house to take care of the plaintiff, because he was under the influence of intoxicating liquor, and was ugly, as the defendants claimed she did.

Under the pleadings and the claims of the parties, the defendants were permitted to show by McCormick, Patrick Brown and Mrs. Walter Ladd, subject to plaintiff's exception, that they had seen the plaintiff, on particular occasions previous to the assault and battery, under the influence of intoxicating liquor, and as to his personal appearance, disposition and actions, as to being cross and ugly, on such occasions.

This evidence was admitted upon the defendant's offer to show that these facts were brought to the knowledge of the defendant, Daniel Ladd, before the date of the alleged assault and battery; and such facts were brought to his knowledge, except two instances of drunkenness and manifestation of ugly disposition on those occasions, one testified to by Mrs. Ladd and the other by Archie McCormick.

The plaintiff further claimed and his evidence tended to prove that the defendant, Daniel Ladd, committed an unprovoked assault and battery upon the plaintiff and thereby seriously injured him.

The defendants further claimed and their evidence tended to prove, that the plaintiff committed the first assault upon Daniel, and that what Daniel did to the plaintiff on that occasion was done in the necessary defence of himself.

The pleadings in this case cast upon the defendants the burden of making it affirmatively appear, that Daniel used no more force upon the plaintiff than reasonably appeared to him, under all the circumstances, to be necessary for his own personal safety. *Harrison* v. *Harrison,* 43 Vt. 417-424, and cases therein cited. As bearing upon the reasonableness of the force used by Daniel in repelling the claimed assault of the plaintiff, the defendants claimed and gave evidence tending to prove that Daniel knew by observation and reputation at the time of the assault, that the plaintiff, when under the influence of intoxicating liquor, was a quarrelsome and dangerous man, and that on the occasion in question the plaintiff was under the influence of intoxicating liquor which was then detected by Daniel, and that, in consequence thereof, and having in mind what he knew and had heard of the plaintiff's character under such circumstances, he was afraid of him. It therefore became important for the defendant to show that the plaintiff was under the influence of intoxicating liquor at the time of the alleged assault, and that when under the influence of intoxicating liquor he was a quarrelsome and dangerous man, or was reputed to be such, and that the defendant, Daniel Ladd, had knowledge of such facts or report at the time of the alleged assault, and believed them to be true.

The plaintiff's first exception is to the admission of the testimony of Mrs. Ladd, Brown and McCormick, wherein they testify that they had seen the plaintiff on different occasions under the influence of intoxicating liquor, at times previous to

the assault in question, and that on those occasions he was cross and ugly, as stated above.

The plaintiff urges that this was error, because it was an attempt to prove character by specific instances, and he cites numerous authorities outside of this State in support of his contention, and two cases from this State, some of which support his contention and many of which do not. Among those cases which do not support his claim, are the two cases cited from our own State, and these cases illustrate the error into which the profession are liable to fall if distinctions are not carefully observed.

The word "character" has an objective as well as a subjective meaning which are quite distinct. As applied to man, objective character is his actual character; subjective character is such character as he possesses in the minds of others, and is the aggregate or abstract of other persons' opinions of him. *Powers* v. *Leach,* 26 Vt. 270-278.

In cases of impeachment, where the question of character most frequently arises, the subjective character is the only one involved, for the law is settled, that to create impeachment one must have been so untruthful as to create a reputation in the community where he resides; and hence only general reputation is admissible to establish it; but, in a case like the one at bar, where the actions of a third person are to be affected by a knowledge of another's character, not only may the subjective character be involved, but the objective may be as well; for the action of one, influenced by the character of another, is affected to the same extent by a belief in the truth of general report as it is by a knowledge of the fact, because in either case he believes he knows the fact, and it is that belief which is important. This principle is not new. It was sanctioned in *Harrison* v. *Harrison,* 43 Vt. 417-424, a case cited by the plaintiff. The

defendant there offered to prove that the plaintiff was reputed to be, and was in fact, a quarrelsome man with a violent and uncontrollable temper, known to the defendant at the time, which was excluded by the court, presumably upon an objection similar to the one raised in this case, and the Court reversed the decision and say: "So if the assailant is known to the assailed to be a practiced pugilist and a man of violence, the kind and degree of resistance must be measured, or at least modified, by the apparent danger with which the party is threatened."

Again in *State* v. *Lull,* 48 Vt. 581, another case cited by the plaintiff, the respondent offered to show the violent character of one Kefoe, on an occasion before the alleged assault and battery, knowledge of which was brought to the defendant previous to the act complained of, but the court below excluded it on the ground that it was an attempt to prove character by showing specific instances. This Court reversed that decision and held that the evidence was admissible. Judge Pierpoint, in the opinion for the Court, speaks of its coming within the rule that it was proof of character and not particular acts of violence, and the plaintiff in this suit construes that opinion to be a holding in accordance with his contention; but a careful examination of the case shows that the Court intended nothing of the kind. It could not have been proof of general reputation, for the offer was not to that extent, but was clearly an offer to prove character as observed by the witness himself and not character gathered from the aggregate or abstract reports of others. The Court simply meant, that it was proof of objective character and not of specific instances which went to make up general reputation, or subjective character. It certainly would not accord with the reason of any man to say, that it was admissible to show by a witness the characteriza-

tion of a transaction, and not admissible to show to the jury the transaction characterized, that they might judge for themselves whether the act warranted the conclusions of the witness, or to say that a person could witness a transaction, and by characterizing it and stating that characterization to a third party, make that statement evidence, but could not testify to the fact himself.

The admissibility of evidence tending to show objective character or disposition is also sanctioned in *State* v. *Meader*, 47 Vt. 78-81, wherein the rule laid down in *Harrison* v. *Harrison, supra,* is approved. The defendant in that case offered to show, that the person claimed to have been assaulted was a quarrelsome, fractious man; which was excluded, because the offer was not accompanied by the further offer to show that the defendant had knowledge of that fact, at the time of the alleged assault; and this Court sustained the ruling of the court below; but the opinion clearly indicates that had the offer contained a statement of knowledge on the part of the defendant, the evidence would have been admissible.

To the same effect is the holding in *Knight* v. *Smyth*, 57 Vt. 529. In that case, which was an action for an assault and battery, the Court held that it was admissible for the defendant to prove that the plaintiff was a domineering, turbulent and quarrelsome woman, and cite approvingly *Harrison* v. *Harrison, supra; State* v. *Meader, supra,* and *State* v. *Lull, supra.*

We are not unmindful of the fact that cases can be found outside of this State somewhat in conflict with the views above expressed; but the admissibility of such evidence is so well settled in our own jurisdiction and upon such well grounded reasons, that we do not feel inclined to depart from former holdings of this Court; and we think that the tendency of the

courts is to extend the rule governing the reception of specific instances in the proof of character, upon the idea expressed by Mr. Wigmore in Vol. I, 198, of his excellent work on evidence, wherein he says: "There is no substantial reason against it."

From the foregoing conclusions, it follows, that it was admissible for the defendants to show what was observed as to the character of the plaintiff, as to being cross and ugly when under the influence of intoxicating liquor at a time previous to the alleged assault; and, in order to show that, it was necessary to show that he was under the influence of intoxicating liquor on those occasions; and, as the case tends to show that the defendant, Daniel, knew of those traits of character at the time of the alleged assault and battery, it was not necessary that every occasion observed, which went to make up and establish the existence of those traits of character, should be brought to the knowledge of the defendant in all their details. It was enough that he knew that such traits of character existed, communicated to him by the witnesses who testified respecting them or coming to him from other sources. The evidence objected to was for the jury to say whether such objective character existed as the defendant's evidence tended to show.

The plaintiff's first exception, therefore, was not well taken.

What has been said as to the first exception is equally true of the second. This testimony directly contradicted the plaintiff's evidence, that he never drank intoxicating liquor, and, though the occasion to which the witness testified was several years previous to the date of the alleged assault, it tended to prove the plaintiff's character in this respect at that time, from which the presumption arises that such char-

acter continued until the contrary is shown, or until the date of the alleged assault. The objection that it is too remote is not well taken, and the same was properly received.

What has been said as to the first exception may also be said as to the third exception. That evidence had a tendency to contradict the plaintiff's claim, that he did not drink intoxicating liquor, and was not under its influence at the time of the assault and battery. There was no error in admitting this evidence.

The fourth exception of the plaintiff to the reception of the testimony of Mears, that A. B. Hutchins, a witness produced by the plaintiff, told him that he would do everything in his power to ruin Walter Ladd, father of defendants, John and Daniel Ladd, and of other testimony of Mears showing that witness, Hutchins, was hostile to Walter Ladd, presents a more serious question for consideration. This evidence was offered and received to show a feeling toward the father of the defendants, John and Daniel, and if it was admissible at all, it was because it tended to lessen the force of Hutchins' testimony as against the defendants. If it was admissible, then why are not the feelings of any witness as to the mother, the grandfathers and grandmothers, brothers and sisters, children and grandchildren, and so on *ad infinitum,* as evidence against the other party, broadening the issues out in this respect indefinitely? We have been cited to no authorities either for or against the admission of such evidence, and have been unable to find any. The absence of authority upon this point, while not decisive, has some bearing in determining a question, if it existed, that ought to have come before the court as frequently as the question of feeling of the witness toward one of the parties.

Upon reason and sound policy, we are induced to hold, that the evidence is harmful. The ordinary jury would be liable to treat it the same as if the feeling existed between the witness and the party, and it was reversible error to receive it.

The fifth exception to the testimony of Frank Ladd, that the witness Flanders told him that Mrs. McQuiggan knew nothing and saw nothing of the affray in question, she having testified that she did see it, and the witness, Flanders, having testified to those matters different from what he told the witness, Ladd, was not well taken. For anything that appears in the exceptions, the evidence was properly received as impeaching the testimony of witness, Flanders.

The sixth exception was to the ruling of the court admitting John and Daniel Ladd to testify that, prior to the time of the assault and battery, they had been cautioned by their parents as to their conduct toward the plaintiff. This exception standing alone with no explanation of the grounds of the objection, can furnish no foundation upon which to base error. It may have been, that the evidence was offered in connection with other evidence, that, because of the dangerous character of the plaintiff, which the parents were then discussing, this caution was given, a presumption which may well be made in the absence of anything appearing to the contrary, to uphold the regularity of the action of the court below. If such caution was given in connection with such evidence, it would be admissible upon the question of the amount of force which the defendant, Daniel, reasonably apprehended was necessary for his self-defence. In any view which may be taken of this evidence, it is not apparent to the Court how it could be harmful to the plaintiff.

What has already been said respecting the first exception applies with equal force to the seventh exception. That exception is not well taken.

The plaintiff's offers of evidence, to which his eighth, ninth and tenth exceptions relate, were properly excluded. The evidence offered to which the eighth exception relates, was immaterial and the evidence offered which was excluded subject to the plaintiff's ninth and tenth exceptions, was determined by the court trying the case, to be too remote, and that decision will not be disturbed by this Court. *State* v. *Doherty*, 72 Vt. 381; *State* v. *Bean*, 77 Vt. 384.

The plaintiff's eleventh exception is to the exclusion of an offer to show the pecuniary condition of the plaintiff at the time and after the assault. The offer did not inform the court what was expected to be shown. It simply stated the subject-matter concerning which he offered to give evidence. Whether he expected to show himself rich or poor, the offer does not state. The offer was too general, and there was no error in excluding it.

The twelfth exception to the court's overruling the plaintiff's motion for a verdict against Daniel Ladd, made at the close of the defendant's evidence, is not well taken. It was not taken at the close of all the evidence, and all the evidence in the case is not referred to in the bill of exceptions so as to bring that question of fact before this Court, from which it can say whether there was any evidence supporting the defendant's claim that the plaintiff made the first assault and that the defendant used no more force in his defence than was reasonably necessary; besides the exceptions do show that there was evidence tending to prove that defendant's claims are true.

Exception thirteen is to the failure of the court to charge that the specific instances of intoxication testified to must have been known to defendant, Daniel, at the time of the affray. This exception is not well taken, and the reasons are stated in what the Court say to exception one.

The plaintiff's fourteenth exception is to the refusal of the court to charge as requested and to the charge as made upon that point. Without deciding whether there was or was not error in the court's omission to charge in the language of the request, we hold that there was error in the charge as made. The error consisted in the charge respecting the amount of force that defendant, Daniel, was justified in using to protect himself. After the charge had been made and counsel had appeared at the bench and taken exceptions, the court addressed the jury as follows:—"Counsel have called my attention to a statement that I made in referring to the amount of force that Daniel was justified in using to protect himself. I thought I made it clear to you, that it is the amount of force which he honestly believed to be necessary under the circumstances, but, if I did not make that fact clear to you, I now instruct you, that that is the measure of force he was justified in using. His honest belief—his *honest* belief controls."

No authorities have been brought to the attention of the Court wherein it has been held that the amount of force which one might use in self-defence depended upon *honest belief* and we think none can be found. The true rule, as we believe, is that the amount of force which one may justifiably use in self-defence, is such as reasonably appears to him to be necessary under all the circumstances in the case, and whether he is justified in the particular occasion, depends upon whether the jury find that it reasonably appeared to him that it was necessary to use the force which he did use. To rest his justifica-

tion upon the *honest belief* which he entertained at the time, without reference to anything else, would deprive the jury of all considerations, except the simple inquiry of whether the defendant acted *honestly,* and if they found he did so act, the justification wo'uld thereby be made out, notwithstanding that the defendant acted in the most absurd and cruel manner. The defendant in such a case would be the sole judge of the amount of force and violence which he might inflict upon one who had first assaulted him, notwithstanding that that assault may have been of the most trivial character.

The rule which we have adopted in this case has the sanction of all or nearly all the cases, not perhaps in the same language, but in substance the same.  *Foss* v. *Smith,* 76 Vt. 113; *Beard* v. *United States,* 158 U. S. 550; *May* v. *The State,* 6 Tex. App. 191; *Edwards* v. *Leavitt,* 46 Vt. 126; *Anderson* v. *United States,* 170 U. S. 481; *Addington* v. *United States,* 165 U. S. 185.

As the result of our decision sends the case back to the county court for another trial, we have considered all the exceptions raised on the former trial, notwithstanding that the case could have been disposed of upon the fourteenth alone.

*Judgment reversed and cause remanded.*